HLG/dmh         4/2/12         44758

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

TANYA GILL,

         Plaintiff,

   v.

VILLAGE OF MELROSE PARK, a
Municipal Corporation; The MELROSE
PARK POLICE DEPARTMENT; Melrose
Park Police Officer RECINOS (Badge No.
47); Melrose Park Police Officer BARTEMIO;
Melrose Park Police Officer MIGLIORE;
Melrose Park Police Officer GIBSON;
Melrose Park Police Officer NATALE; and
OTHER UNKNOWN MELROSE PARK
POLICE OFFICERS.

         Defendants.

No.

### COMPLAINT AT LAW

NOW COMES the plaintiff, TANYA GILL, by and through her attorney, HUNDLEY

LAW GROUP, and complaining of the defendants, states as follows:

### FACTS APPLICABLE TO ALL COUNTS

1. On or about Saturday, April 2, 2011, and at all times herein, the plaintiff, TANYA GILL,

     was a resident of Cook County, Illinois.

2. At all times herein, the VILLAGE OF MELROSE PARK was a Municipal Corporation

     located in Cook County, Illinois, and operating within the State of Illinois.

3. Upon information and belief, at all times herein the MELROSE PARK POLICE

     DEPARTMENT was a local law enforcement agency operating pursuant to all applicable

     state and local laws, and exists as a political subdivision of the VILLAGE OF MELROSE

     PARK.


EXHIBIT
A

4. The defendants, Officer RECINOS (Badge No. 47), Officer BARTEMIO, Officer MIGLIORE, Officer GIBSON, Officer NATALE, and OTHER UNKNOWN MELROSE PARK POLICE OFFICERS, were at all times material hereto duly appointed police officers of the MELROSE PARK POLICE DEPARTMENT, and were acting in their individual capacities, under color of state law and within the scope of their employment.

5. On Saturday, April 2, 2011, at approximately 11:15 PM, the Plaintiff, TANYA GILL, arrived with a friend at the iBar, a bar, club, restaurant and/or entertainment venue located at 2010 W North Avenue in Melrose Park, Illinois. The plaintiff had been invited to the iBar to attend the birthday party of an acquaintance.

6. The plaintiff and her friend entered the iBar, went through the bar's security screening, and proceeded to the bar to each order a drink. When the drinks arrived, the plaintiff stood at the bar next to her friend, who was seated at a stool. Shortly thereafter, two other patrons approached toward the plaintiff, who stepped toward the bar to let them pass.

7. The two patrons, who appeared to be heading toward the bar stool next to the plaintiff's friend, were a woman who appeared obviously intoxicated and her male companion, who was essentially holding her up. The man passed by the plaintiff without incident, but the woman, as she passed, pushed the plaintiff and made a comment about how she was getting back to her stool. The plaintiff and her friend commented toward the woman and her companion that the woman's actions were unnecessary, but the plaintiff then turned back toward her friend (that is, with her back then partially toward the intoxicated woman) and continued her conversation with her friend.

8.  Moments later, without knowledge or warning to the plaintiff, the intoxicated woman punched the plaintiff, making contact with the plaintiff's face. The plaintiff's friend stood up and between the plaintiff and the intoxicated woman, and announced that she was calling the police.

9.  The plaintiff's friend then did call the police. The intoxicated woman began to apologize to the plaintiff, who immediately walked away from the scene of her battery and went outside to meet the responding police officers.

10. Several Melrose Park Police Officers arrived outside the bar in response to the plaintiff's friend's call. Eventually the plaintiff's friend, the intoxicated woman, and the woman's companion all went outside the bar.

11. From the moment that the plaintiff arrived at the iBar until the plaintiff's first contact with the Melrose Park Police Department, no more than 30 minutes had passed. The plaintiff had not consumed any alcohol that night other than the sip or two of the drink she ordered prior to being battered.

12. The plaintiff then began responding to the several police officer's questions about what had happened. The plaintiff's friend was emotional and agitated about what had happened, and the plaintiff asked her to walk further away while the plaintiff dealt with reporting the incident to the police.

13. An employee and/or owner of the iBar also came outside, and repeatedly told the police officers that there had been no incident or altercation at the bar. At the same time, the visibly intoxicated woman, the person who had battered the plaintiff moments ago, repeatedly, without any prompting, was saying "I'm sorry... I'm sorry...."

3

14. The plaintiff was asked by multiple officers, multiple times, to describe what had occurred between herself and the intoxicated woman. Throughout this time, the officers commented that the bar personnel/owner stated that there had been no incident, that there was no blood or other sign of injury, and other comments indicating an unwillingness to take the plaintiff's complaint against the intoxicated woman (who continued to say "I'm sorry" in the background).

15. Finally, one of the officers, believed to be defendant Officer RECINOS, asked the plaintiff to show him what had happened. The plaintiff then reenacted toward this officer how the intoxicated woman had used her left arm to shove the plaintiff. This reenactment was done without any actual force toward the officer, and as a compliant response to the officer's request. The plaintiff's gestures could not have reasonably been interpreted as any threat toward the officer.

16. As a result, however, Officer RECINOS grabbed the plaintiff's wrist, twisted it, put her arm behind her back and shoved her elbow in an upward motion, forcing her over to a vehicle parked in front of the walkway in an attempt to slam her down onto the vehicle.

17. As this was occurring, the plaintiff was asking the officer why he was doing this to her. Another officer told Officer RECINOS three times to let the plaintiff go. Eventually, Officer RECINOS released his hold.

18. As a result of the force used by Officer RECINOS and the amount of time it was applied, the plaintiff experienced significant pain about her body.

19. None of the responding police officers took the plaintiff's complaint, and they allowed the intoxicated woman who had battered the plaintiff to leave the scene. The plaintiff's friend was able to take down the license plate number of the intoxicated woman's vehicle.

4

20.   The plaintiff then left the iBar parking lot and proceeded to the Melrose Park Police Department to make another attempt at reporting the battery she suffered inside the iBar.

21.   The plaintiff eventually spoke with Melrose Park Police Lt. Michael Sarni, who appeared to have some information about the incident prior to any conversation with the plaintiff. Lt. Sarni took down information from the plaintiff, but stated that he could not take the plaintiff's report at that time, asking the plaintiff to return the following day.

22.   When the plaintiff and Lt. Sarni walked back out to the police department lobby, where the plaintiff's friend had been waiting, the plaintiff's friend reported that a Melrose Park Police vehicle had pulled up next to the plaintiff's car, and that an officer had been walking around the car shining his flashlight into the interior of the car.

23.   Lt. Sarni walked with the plaintiff to her car, and confirmed that the car was legally parked and that the car's license and registration were current.

24.   Lt. Sarni later went to the iBar and reviewed the bar's security video of both the incident inside the iBar and the police actions outside the iBar.

25.   Upon information and belief, the video images clearly documented the battery to the plaintiff inside the bar and the police misconduct outside the bar.

26.   Upon information and belief, Lt. Sarni took custody of the recording of the security video, and inventoried it as evidence with the Melrose Park Police Department.

27.   On June 15, 2011, the plaintiff's undersigned counsel sent a certified letter to both Sam C. Pitassi, Chief of Police of the Melrose Police Department, and Bartosz Bazan, the registered agent of iBar Holdings LLC and apparent owner of the iBar, and instructed them to preserve both the video recording(s) and any documents or evidence related to this incident. No response has been received to either letter.

5

28. The evening following this incident, Lt. Sarni called the plaintiff to confirm that she would be returning to the police department to make her report.

29. Later than evening, the plaintiff did return to the Melrose Park Police Department, this time with a male friend, and spoke with Lt. Sarni, who confirmed what the security video showed both inside and outside the iBar.

30. Then another officer, believed to be defendant Officer RECINOS, took down the plaintiff's report. The plaintiff, her male friend, and Lt. Sarni observed that Officer RECINOS was rude and aggressive with the plaintiff while taking the report. Upon the plaintiff's inquiry, Officer RECINOS refused to identify himself.

### COUNT I
### (42 USC § 1983 Excessive Force — Individual Police Officers)[1]

1 - 30. Plaintiff incorporates Paragraphs 1 through 30 above as though fully stated herein.

31. The defendants, Officer RECINOS and/or others, without provocation, used excessive, unnecessary and/or unreasonable force against plaintiff TANYA GILL, in violation of her rights under the United States Constitution.

32. The conduct of these defendants was intentional, willful, malicious, in reckless disregard of, deliberately indifferent to and/or callously indifferent to the plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

33. The direct and proximate consequence of said acts were that the plaintiff suffered pain, bodily injury and mental suffering as a result of the deprivation of her right to be free

---

[1] The plaintiff has named as defendants each of the officers presently known to have responded to the incident at the iBar. In that the plaintiff has not yet been able to view the video or review all of the reports or other documents about this incident, the plaintiff is proceeding cautiously regarding the identity of the officer or officers who have committed these intentional torts toward her. The plaintiff will amend her complaint and dismiss officers, if appropriate, once this preliminary discovery has been had.

6

from the use of excessive force as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

34.     This action is brought pursuant to 42 U.S.C. § 1983 to redress deprivations of constitutional and civil rights committed under color of State law.

WHEREFORE, the plaintiff, TANYA GILL, demands damages from the defendants, and each of them, in an amount in excess of the jurisdictional limits of the Law Division of the Circuit Court of Cook County.

### COUNT II
#### (42 USC § 1983 False Arrest — Individual Police Officers)

1 - 30. Plaintiff incorporates Paragraphs 1 through 30 above as though fully stated herein.

35.     The defendants, Officer RECINOS and/or others, falsely, maliciously and without probable cause arrested the plaintiff, TANYA GILL, and restricted her liberty in violation of her rights under the United States Constitution.

36.     By the conduct alleged herein, the plaintiff was deprived of her right to be free from unlawful arrest, seizure or detention in violation of the Fourth and Fourteenth Amendments to the United states Constitution.

37.     Said acts or omissions, as alleged herein, were done by these defendants willfully, recklessly and oppressively without legal justification and for the sole purpose of depriving the plaintiff of her constitutional rights under the law.

38.     As a result of the aforesaid acts of defendants, the plaintiff suffered emotional trauma, anguish, and humiliation.

39.     This action is brought pursuant to 42 U.S.C. § 1983 to redress deprivations of constitutional and civil rights committed under color of State law.

WHEREFORE, the plaintiff, TANYA GILL, demands damages from the defendants, and each of them, in an amount in excess of the jurisdictional limits of the Law Division of the Circuit Court of Cook County.

### COUNT III
#### (Common Law Battery — Individual Police Officers)

1 - 30. Plaintiff incorporates Paragraphs 1 through 30 above as though fully stated herein.

40. By said acts or omissions of the the defendants, as alleged herein, the defendants committed an offensive and unauthorized touching of the the plaintiff.

41. As a direct and proximate result of the aforesaid acts by the defendants, the plaintiff suffered physical injury and pain, incurred the expense of medical treatment, lost income and/or earning capacity, and suffered and does suffer a loss of normal life.

WHEREFORE, the plaintiff, TANYA GILL, demands damages from the defendants, and each of them, in an amount in excess of the jurisdictional limits of the Law Division of the Circuit Court of Cook County.

### COUNT IV
#### (Common Law Battery — Respondeat Superior)

1 - 30. Plaintiff incorporates Paragraphs 1 through 30 above as though fully stated herein.

40-41. Plaintiff incorporates Paragraphs 40 through 41 of Count III above as though fully stated herein.

WHEREFORE, the plaintiff, TANYA GILL, demands damages from the defendants, the VILLAGE OF MELROSE PARK and the MELROSE PARK POLICE DEPARTMENT, and each of them, in an amount in excess of the jurisdictional limits of the Law Division of the Circuit Court of Cook County.

## COUNT V
### (Common Law False Arrest And Imprisonment — Individual Police Officers)

1 - 30. Plaintiff incorporates Paragraphs 1 through 30 above as though fully stated herein.

42.   The defendants, Officer RECINOS and/or others, falsely, maliciously and without probable cause arrested the plaintiff, TANYA GILL, and restricted her liberty of movement.

43.   By the conduct alleged herein, the plaintiff was deprived of her right to be free from unlawful arrest, seizure or detention.

44.   Said acts or omissions, as alleged herein, were done by these defendants willfully, recklessly and oppressively without legal justification and for the sole purpose of depriving the plaintiff of her rights under the law.

45.   As a result of the aforesaid acts of defendants, the plaintiff suffered emotional trauma, anguish, and humiliation.

46.   The plaintiff was not guilty of any crime at the time of her arrest.

47.   As a direct and proximate result of the aforesaid acts by the defendants, the plaintiff suffered emotional trauma, anguish, and humiliation.

WHEREFORE, the plaintiff, TANYA GILL, demands damages from the defendants, and each of them, in an amount in excess of the jurisdictional limits of the Law Division of the Circuit Court of Cook County.

## COUNT VI
### (Common Law False Arrest And Imprisonment - Respondeat Superior)

1 - 30. Plaintiff incorporates Paragraphs 1 through 30 above as though fully stated herein.

42-47. Plaintiff incorporates Paragraphs 42 through 47 of Count V above as though fully stated herein.

9

WHEREFORE, the plaintiff, TANYA GILL, demands damages from the defendants, the VILLAGE OF MELROSE PARK and the MELROSE PARK POLICE DEPARTMENT, and each of them, in an amount in excess of the jurisdictional limits of the Law Division of the Circuit Court of Cook County.

Respectfully submitted,

HUNDLEY LAW GROUP

By:

David M Hundley

HUNDLEY LAW GROUP
1001 W Van Buren St
Chicago IL 60607-2900
(312) 212-3343
dmh@hundleylaw.com

10

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

TANYA GILL,

        Plaintiff,

v.                             No.

VILLAGE OF MELROSE PARK, a
Municipal Corporation, *et al.*

        Defendants.

**AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)**

    DAVID M HUNDLEY, pursuant to 735 ILCS § 5/1-109 (West 2011), on oath, deposes and states as follows:

1.    I am the attorney representing the plaintiff, TANYA GILL, in this matter.

2.    I have personally discussed the circumstances of this occurrence with the plaintiff and have learned the nature and extent of her resulting injuries and damages.

3.    Based upon information presently available regarding the nature and extent of the plaintiff's damages, I believe that her total damages exceed $50,000.00.

    Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily belief the same to be true.

                                                  David M Hundley

11