IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TANYA GILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 CV 2963 |
| vs. ) | |
| ) | Honorable John J. Tharp, Jr. |
| VILLAGE OF MELROSE PARK, et al. ) | Magistrate Judge Sheila M. Finnegan |
| ) | |
| Defendants. ) | |

## SWORN AFFIDAVIT OF VITO MIGLIORE

I, VITO MIGLIORE, being first duly sworn upon oath, do state and depose that I have personal knowledge of all facts which follow and, if called, I could testify to the following:

1. I am a police officer employed by the Village of Melrose Park.

2. I was working in my capacity as a patrol officer on April 2, 2011.

3. At approximately 11:42 p.m. I responded to a dispatched report of a potential battery at the I-Bar located at 2010 W. North Avenue in Melrose Park, Illinois.

4. Upon arriving at the scene, I exited my police vehicle and entered the I-Bar. Melrose Park police officers Adam Gibson, Mike Recinos, Dennis Natale and Leonard Bartemio were also at the scene. I spoke to one of the officers who stated that the parties involved in the incident were asked to come outside. I then walked out of the I-Bar and waited by the front door. Ms. Tanya Gill, the alleged victim, eventually came outside and I signaled for her to come speak with me.

5. Ms. Gill's friend, Ms. Tonya Frizell, also came out with Ms. Gill. Ms. Frizell was yelling that Ms. Gill had been slapped in the face and she wanted the offender arrested. Ms.

1



Frizell was asked on several occasions to calm down and let Ms. Gill explain what happened to the officers. Ms. Frizell was speaking in an agitated and loud tone, making it difficult for me to speak with Ms. Gill.

6. I-Bar owner Bartosz Bazan also came out of the I-Bar and stated that he was behind the bar at the time of the alleged incident and did not see the alleged battery. Several other Melrose Park officers interviewed patrons inside the I-Bar, as well as the bartender, and none reportedly saw the alleged battery.

7. I began questioning Ms. Gill about the incident. Ms. Gill stated that she was pushed backwards by another bar patron while standing at the bar and then struck in the face by the same patron. On several occasions I had to ask Ms. Gill to repeat herself because of the loud noise outside the bar and because many people were talking at the same time.

8. I asked Ms. Gill again to explain to me what happened. Ms. Gill then pushed me with her left forearm making physical contact with my stomach and chest, and causing me to move backward.

9. I did not ask Ms. Gill to physically show me on my person how she was struck.

10. Ms. Gill is 6'0 tall and was wearing 3-inch high heels.

11. I am 5'10" tall and, at the time, I weighed about 160 pounds.

12. Ms. Gill was quite larger than me.

13. In response to Ms. Gill making contact with me, and for my own safety, I grabbed Ms. Gill's arm by the wrist with one hand and her elbow with another hand, and placed her arm behind her back. This is called an arm bar control technique and was a use of force option taught in the police academy.

14. In order to control the situation and remove Ms. Gill away from the crowd that has gathered on the sidewalk, I walked her to a nearby car until I believed she was no longer a threat to my safety. I held Ms. Gill's arm in that position for approximately 25-30 seconds and then released her.

15. At no time did Ms. Gill state that I was hurting her.

16. Upon release, I spoke with Ms. Gill and she then walked away from me and into the I-Bar parking lot.

17. I eventually left the I-Bar and continued with my patrol duties.

Further affiant sayeth not.

_____
VITO MIGLIORE

SUBSCRIBED and SWORN to before
me this 27th day of February, 2013.

_____
NOTARY PUBLIC

OFFICIAL SEAL
MARCIA CUCCI
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 03/12/2015

3