IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TANYA GILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 2963 |
| | ) | |
| VILLAGE OF MELROSE PARK, *et al*. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Tanya Gill, filed this civil rights lawsuit against Melrose Park police officers Vito Migliore, Mike Recinos, Leonard Bartemio, Adam Gibson, Dennis Natale, and the Village of Melrose Park (the "Village"), alleging claims of excessive force and false arrest under 42 U.S.C. § 1983, and state-law claims of battery and false arrest and imprisonment against Officer Migliore and the Village (under the *respondeat superior* theory).[1] Gill alleges that the officers who responded to a reported battery against Gill at a bar in Melrose Park unreasonably seized her and used excessive force after she made incidental physical contact with Officer Migliore when describing the alleged battery. The defendants move for summary judgment, arguing that, as a matter of law, the seizure and the amount of force used were reasonable. For the reasons set forth below, the motion is granted.

---

[1] Gill concedes the motion as to Officers Recinos, Bartemio, Gibson, and Natale. Pl. Resp. Mem., Dkt. 36 at 3. Therefore, the motion for summary judgment is granted in full as to them.

## BACKGROUND

A. **Plaintiff's Local Rule Non-Compliance**

The Court's summary of undisputed facts is taken from the parties' Local Rule 56.1 statements to the extent they comply with the rule and are material to the motion. Plaintiff's Response to Defendants' Local Rule 56.1 Statement, however, is littered with new facts, legal arguments, and attempts to dispute facts without citations to the record.[2] Local Rule 56.1(b)(3) requires the party opposing summary judgment, when disputing a fact, to include "specific references to the affidavits, parts of the records, and other supporting materials relied upon," and a separate and additional statement for "any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B), (C). Rather than submitting a statement of additional facts under Local Rule 56.1(b)(3)(C), however, the plaintiff simply folds new facts in to her responses. These additional facts will be disregarded. *See Ammons v. Aramak Uniform Servs., Inc.*, 386 F.3d 809, 817 (7th Cir. 2004) (district court did not abuse its discretion to strike

---

[2] For example, while ostensibly responding to the defendants' proposed fact that Gill consumed two glasses of wine earlier in the evening, Gill states:

> Agreed, but immaterial to the motion. Presumably the Defendants are seeking to introduce this fact in the hopes that alcohol consumption general is prejudicial to the Plaintiff. This fact lacks sufficient foundation regarding time and quantity of consumption. Moreover, there are no additional facts, and no testimony, that the Plaintiff exhibited any effects from two drinks much earlier in the day. The defendants have strategically chosen not to include the entire transcript of the Plaintiff's deposition. There is no question, however, that after receiving no service from the Melrose Park Police following the battery to her face, the Plaintiff left the iBar parking lot, observed by multiple police officers, and proceeded to go to the Melrose Park Police station on her own, engage in a lengthy discussion with Lt. Sarni, and eventually left without further incident. (*See* Def[s]. Ex. A at 31–36, 83, 151–52).

Pl. Resp., Dkt. 37 at ¶ 4.

any additional facts not included in a separate statement of additional facts). Further, any disputed facts that do not include citations to the record, or that simply recharacterize the defendants' facts without actually disputing them, will be disregarded. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006), *cert. denied*, 551 U.S. 1119 (2007) (district court properly exercised its discretion to disregard a "statement of material facts . . . [that] did not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). And to the extent Gill fails to effectively dispute facts properly set forth and supported by the defendants, those facts are deemed admitted for purposes of the motion. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). The summary below reflects those facts that are undisputed in light of these principles.

B. Facts

On April 2, 2011, Tanya Gill and her friend Tanya Frizell went to I-Bar, a tavern in Melrose Park. Shortly after arriving, Frizell called 911 to report that another patron had struck Gill in the face. Melrose Park Police Officers Migliore, Recinos, Bartemio, Gibson, and Natale responded to the call.

Officer Migliore interviewed Gill outside the bar, away from the entrance and toward the corner of the building. Gill, at 6'0" and wearing 3" heels, *id.* at ¶ 30, is taller than Officer Migliore.[3] Numerous people were also standing outside the bar including Frizell, Kevin Dixon (another friend of Gill's), the alleged assailant and her companion, I-Bar employees, multiple

---

[3] Defendants' Statement of Facts states that he is 5'6", and the plaintiff agreed. The citations provided, however, are conflicting: in his affidavit (on which the defendants' statement of facts purports to rely), Officer Migliore attests that he is 5'10" tall. *See* Defs. Ex. B, Migliore Aff., Dkt. 28-2 at ¶ 11. Gill testified in her deposition that he was 5'6" tall. *See* Defs. Ex. A, Gill Dep., Dkt. 28-1 at 55. Either way, there is no dispute that Migliore is shorter than Gill.

police officers, and other patrons waiting to enter the bar. There was "a lot of commotion outside the bar."[4] People, including Frizell, were interrupting Officer Migliore and Gill's conversation, and trying to say different things. Ms. Frizell, was "very emotional and agitated and loud toward the police."

Officer Migliore asked Gill to describe the assault. Gill did not interpret this question to mean that she should physically show the officer on his person how a woman in the bar allegedly pushed Gill.[5] However, when responding to this question, Gill's left forearm made contact with Officer Migliore's chest.[6] Following this action, Officer Migliore took the Plaintiff's arm and wrist, executed an arm bar maneuver—putting Gill's arm behind her back and then pushing her own elbow into the middle of her back in an upward thrust—and then moved her six to seven steps over to a nearby car, which Migliore used to further restrain Gill's movement.

Although Gill says that Migliore forcefully pushed her into the side of the car, that assertion is clearly belied by video from a security camera at the bar, the evidentiary foundation of which the plaintiff does not dispute. Officer Migliore's interview with Gill, her contact with him, and his placement of Gill in the "arm bar technique" take place just off camera; when

---

[4] The plaintiff does not dispute this fact, but does state that "[t]he term 'a lot of commotion' is vague . . . ." Pl. 56.1 Resp., Dkt. 37 at ¶ 17. However, as the plaintiff acknowledged in her 56.1 Response, she testified in her deposition that there was a lot of commotion, Defs. Ex. A, Gill Dep., Dkt. 28-1 at 57, 63, 80.

[5] Gill attempts to dispute this fact, but rather confusingly writes, "[a]greed, as described above in plain English. As argued in the supporting memorandum, the fact is in dispute." Pl. 56.1 Resp., Dkt. 37 at ¶ 28. But the only record citation does not contradict Gill's testimony that she did not interpret the question to mean she should show him on his person. *See* Defs. Ex. A, Gill Dep., Dkt. 28-1 at 64. There is no evidentiary basis in the record to support an assertion that Gill believed she had been asked to physically demonstrate the battery on Officer Migliore.

[6] Gill attempts to dispute this fact by writing: "Agreed as stated. Disputed as represented in the Defendants' supporting memorandum." Pl. 56.1 Resp., Dkt. 37 at ¶ 27. She then adds new facts that should have been presented in an additional statement of facts, to which defendants could respond. The fact is deemed admitted, or "agreed as stated."

Officer Migliore and Gill enter the frame, her arm is already behind her back. Migliore can be seen guiding Gill toward the car, and both Migliore and Gill are standing upright. At no point does Officer Migliore slam or push Gill into the car.[7]

Officer Migliore kept Gill in this position for approximately thirty seconds and then released her. Gill then calmly walked away without apparent distress, physical or otherwise. Gill never informed Officer Migliore that he was hurting her, or that she was in any pain during the encounter. Within 45 seconds of being released, Gill left the premises, undeterred by the officers.

**ANALYSIS**

Summary judgment is appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the facts are "viewed in the light most favorable to the nonmoving party," unless those facts are "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party who bears the burden of proof at trial—here, the plaintiff—"may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To dispute a fact, the plaintiff "must identify with reasonable particularity the evidence upon which [she] relies. *Id*. at 490. As the non-moving party, the plaintiff's evidence, if properly presented, must be believed, and the court must draw all justifiable inferences in the plaintiff's favor. *Id.*

---

[7] The plaintiff attempted to add additional facts into her 56.1 Response, which do not comply with Local Rule 56.1(b)(3) and are therefore disregarded; accordingly, this is not a disputed fact. Moreover, the Court has viewed the video evidence of the dispute, which clearly shows that she was not slammed or pushed into the side of the car.

5

## I. False Arrest Claim

To prevail on her § 1983 claim for false arrest, Gill must prove that (1) a seizure occurred and (2) the seizure was unreasonable. *See Carlson v. Bukovic*, 621 F.3d 610, 619 (7th Cir. 2010). The defendants concede, for summary judgment purposes, that a seizure occurred when Officer Migliore restrained Gill, and the evidence leaves no room for doubt. Therefore, the only question is whether it can be determined as a matter of law that Officer Migliore acted reasonably.

To determine reasonableness, the Court must "weigh[] the governmental need to seize 'against the investigation into one's privacy that the . . . seizure entails.'" *Leaf v. Shelnutt*, 400 F.3d 1070, 1091 (7th Cir. 2005) (quoting *United States v. Sechrist*, 640 F.2d 81, 86 (7th Cir. 1981) (alterations in original)). The reasonableness of the seizure also depends on its nature and duration. The defendants maintain that, following Gill's physical contact, Officer Migliore briefly detained her in order to ensure his own personal safety, akin to a brief investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). In the alternative, they claim even if a full "arrest" occurred, Officer Migliore had probable cause to believe Gill had committed a battery on him, and thus, the seizure was objectively reasonable. Gill contends that the existence of probable cause is an issue of fact because in his affidavit Officer Migliore did not explicitly state that he believed he was a victim of a battery and because "the brush/touch contact was unintentional and without force." Although she does not say so explicitly, Gill appears to contend that this was a formal arrest because she discusses only probable cause.

It matters not whether Migliore's action is considered an "arrest" or some lesser form of seizure, if, as a matter of law, the action was supported by the highest justification, probable cause. "Probable cause is an absolute bar to a § 1983 claim for false arrest." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Probable cause to arrest exists "if a reasonable person would

believe, based on the facts and circumstances known at the time, that a crime had been committed." *Id.* at 707; *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir 2000) ("Probable cause exists at the time of arrest when reasonably trustworthy information, facts and circumstances would lead a prudent person to believe that a suspect had committed or was committing a crime."). The determination of probable cause is objective—"an arresting officer's state of mind (except for the fact that he knows) is irrelevant to the existence of probable cause." *Fitzgerald v. Santoro*, 707 F.3d 725, 732 (7th Cir. 2013) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Moreover, "[i]f facts sufficient to create probable cause are undisputed, probable cause is a question of law." *Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997) (citation omitted); *see Neiman*, 232 F.3d at 580 (probable cause can be decided by the court "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them"). Even if disputed facts are necessary to the determination of probable cause, the court may still find the existence of probable cause as long as the plaintiff's version of the facts is adopted. *Potts*, 121 F.3d at 1112 (citing *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999)). Based upon the facts properly before the Court, taken in the light most favorable to the plaintiff, the determination can be made as a matter of law in this case.

Officer Migliore had probable cause to arrest Gill for committing battery. In Illinois, "[a] person commits battery if he or she knowingly [and] without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3. If committed against a peace officer, like Officer Migliore, the battery is *per se* "aggravated." *See* 720 ILCS 5/12-3.05(4). Because Officer

Migliore does not allege he suffered bodily harm, the contact must have been "insulting or provoking" to constitute a battery.

It is undisputed that Gill made bodily contact with Officer Migliore. Although the contact was not forceful, it still supplies probable cause for a battery arrest because "Illinois follows the common law rule that any contact, however slight, may constitute a battery." *Garcia-Meza v. Mukasey*, 516 F.3d 535, 538 (7th Cir. 2008). Thus, "physical contact between an arrestee and a law enforcement officer, however minor, can provide probable cause for battery." *London v. Harris*, 09 C 7797, 2013 WL 1405250, at *6 (N.D. Ill. Apr. 5, 2013) (quoting *Adeszko v. Degnan*, 2006 WL 3469541 at *3 (N.D. Ill. 2006)). However, "[i]t cannot be that *any* contact with a civilian—an accidental brush at Taste of Chicago, an inadvertent bump on the El, or an incidental shoulder while exiting Wrigley Field—may be deemed an insult or provocation sufficient to justify an arrest for battery." *London*, 2013 WL 1405250 at *6 (quoting *Mihalko v. Daley*, 2002 WL 726917, *6 (N.D. Ill. Apr. 24, 2002)).

Although Gill argues that Officer Migliore never testified that he believed he had been battered, this is beside the point in the objective inquiry of what a reasonable officer would have believed. Because an officer's subjective intentions are irrelevant, the Court cannot properly consider "the officer's alleged motivations." *Fitzgerald*, 707 F.3d at 733.

Gill further contends that she was simply trying to act out the alleged previous assault, and in the process hit Office Migliore. Even assuming that to be true, it is irrelevant to the question of whether there was probable cause to believe that she had committed a battery. Whether the physical contact was intentional does not impact the existence of probable cause. *See United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) ("[T]he offender's perception of the circumstances is not sufficient to defeat probable cause, because probable cause is based on what

is known to the arresting officer at the time, not what goes on in the offender's mind."). Gill's own state of mind is irrelevant to what the officer perceived at the time. *See id*. *London*, 2013 WL 1405250 at *3 (police officer had probable cause to arrest for battery even though plaintiff said that "he may have brushed against [the officer] and that it [was] possible that his elbow made contact with [the officer]," but that it was unintentional); *See Gluszek v. Linkletter,* 96 C 2735, 1997 WL 769464, at *3 (N.D. Ill. 1997) ("[The plaintiff] insists that his striking of [the police officer] was unintentional and that he was unaware of the fact that [the police officer] was standing behind him. But whether [the plaintiff] actually intended to strike [the police officer] is immaterial to the determination of probable cause.")

While *Gill* may have known that she had no intention of hitting or provoking him, the relevant question is whether *Officer Migliore* should reasonably have known that. Unless there was no reasonable basis on which an officer in Migliore's position could have interpreted Gill's action in contacting him as insulting or provoking in nature, there was probable cause to believe that Gill had committed a battery. And there was a reasonable basis for such a belief: Migliore and his colleagues had been called to address a fight at the bar; Gill was one of the participants in that fight. She claimed to be the victim, but that was part of what the police were trying to sort through at the time; Migliore had no basis at that point to know whether Gill's claim to be the victim was true. What he did know was that Gill had been involved in an altercation, had been drinking, had a number of friends with her outside the bar, and that one of those friends was yelling at the police in an "agitated" fashion. Then—though he did not invite her to physically demonstrate what had happened during the fight—Gill nevertheless began gesticulating and hit the officer in the chest while doing so. Under these circumstances, there was probable cause to believe that Gill had committed a battery because there was a reasonable basis to believe that

9

Gill was acting aggressively towards Migliore. Between the physical contact and the volatile environment, the facts and circumstances would lead a prudent person to believe that Gill had committed or was committing a battery when she hit Officer Migliore in the chest.

Furthermore, the minimal level of force employed by Gill does not preclude a finding of probable cause. *See Gluszek,* 1997 WL 769464, at *3 n.6 ("[The plaintiff] contends that he did not hit [the police officer] 'hard.' However, the amount of force used under these circumstances is irrelevant. It is unquestionably reasonable for an officer to believe that an elbow to his stomach—of any force—under these circumstances was 'provocative.'"). In fact, courts have routinely found probable cause for battery for lesser physical contact than that involved here. *See Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (poking an officer in the chin provides "probable cause to arrest [the offender] for having committed an aggravated battery under Illinois law"); *People v. Peck*, 633 N.E.2d 222, 224 (Ill. 1994) (spitting in the face of a police officer "clearly amounts to" aggravated battery). The amount of force required by the State of Illinois is so minimal that the Seventh Circuit has noted that "in Illinois, an individual angry at being given a parking ticket might crumple up the ticket and throw it on the ground and face charges of aggravated battery if the ticket hit the issuing officer's shoe." *Garcia-Meza*, 516 F.3d at 538. If throwing a ticket at an officer's shoe is sufficiently forceful to constitute battery, then Gill's physical contact with Officer Migliore's chest similarly amounts to probable cause for battery.

Probable cause is judged based on what the officer reasonably believes in the moment, and in the context of the officer's interview with Gill, outside of the bar, in a crowd, where there was an ongoing commotion, no facts indicate that Officer Migliore could or should have known that Gill's action was incidental or inadvertent. The evidence, even when viewed in the light

most favorable to the plaintiff, demonstrates Officer Migliore had probable cause to believe Gill had committed an aggravated battery after her forearm made contact with his chest. The brief seizure that followed, lasting only about 30 seconds, was therefore reasonable as a matter of law.[8]

## II. Excessive Force Claim

Gill also contends that Officer Migliore used excessive force during the seizure. Excessive force claims are analyzed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Objective reasonableness is a question of law. *Fitzgerald*, 707 F.3d at 733. To assess the reasonableness of the officer's actions, courts examine "the severity of the crime, whether the arrestee poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest to flee and evade arrest." *Abbott*, 705 F.3d at 724 (citing *Graham*, 490 U.S. at 396). No one factor is dispositive; instead, reasonableness is determined by the totality of the circumstances. *Id.* Moreover, courts must "employ allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 395. Because of this, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's

---

[8] For the sake of completeness, the Court notes as well that even if the circumstances leading up to Officer Migliore's brief seizure of Ms. Gill did not provide probable cause to believe she committed a battery, it seems plain that probable cause was not required in any event because Migliore did not "arrest" Ms. Gill when he seized her for about 30 seconds to ensure that she was not trying to be aggressive with him; certainly that seizure did not include any of the customary indicia of an arrest. It is reasonable for police officers to briefly seize an individual in order to ensure their own safety or the safety of others. *United States v. Hensley*, 469 U.S. 221, 235 (1985) (police are "authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop"). Under the circumstances, Officer Migliore's 30-second seizure of Ms. Gill while ascertaining her intentions after she contacted him in the chest with her arm was not unreasonable.

chambers,'" violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than in hindsight. *Fitzgerald*, 707 F.3d at 733.

Here, the security video, which captures the culmination of the incident, shows Officer Migliore's actions were neither fast nor violent; he did not punch or kick the plaintiff, nor did he slam her into the car.[9] He calmly walked her to the car, and held her there only briefly before letting her go. Before that point—although the video does not capture it—the parties agree that the arm-bar technique was the only force Officer Migliore used. The Seventh Circuit recently examined an excessive-force claim in which the police used the same arm bar technique that Officer Migliore admittedly used on Gill. *See Fitzgerald*, 707 F.3d at 729. In *Fitzgerald*, the plaintiff was neither a criminal suspect nor arrestee, but rather subject to civil detention for self-protection. *Id.* After the plaintiff resisted the officers, they used the arm bar technique in order "to de-escalate the situation." *Id.* While the court was unwilling to categorically hold that the arm bar technique is a *de minimis* use of force, it found the officers' actions were objectively reasonable because they "used minimally forceful techniques designed to . . . prevent escalation. They did not strike or beat [the plaintiff]; they did not attempt to completely disable her. The officers held her arm and wrist in a firm manner meant to induce cooperation." *Id.* at 734.

Here, too, Officer Migliore's action was an in-the-moment judgment, occurring in "circumstances that [were] tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 395. As

---

[9] The Court also notes that while excessive force claims do not "require any particular degree of injury," injury is still "a relevant factor in determining whether an officer used excessive force." *Chelios*, 520 F.3d at 690. While not dispositive, the fact that Gill not only did not incur any physical injury, but never even informed Officer Migliore that she was in pain, further supports the determination that he did not use excessive force.

recounted above, the situation outside the bar was fluid and continuously unfolding as Officer Migliore interviewed Gill, whose agitated friend was standing nearby. When Gill made physical contact with the officer, he had to react instantly, and he made the reasonable judgment to physically seize Gill and separate her from the crowd. As discussed above, a reasonable officer could have interpreted Gill's physical contact as intentional, and briefly placing her in an arm bar technique in order to ascertain her motivations and ensure she did not strike him again, was objectively reasonable. The amount of force used was no greater than that necessary to effectuate a valid seizure and ensure the officer's safety. Therefore, the Court concludes that Officer Migliore's actions were objectively reasonable under the totality of the circumstances.[10]

### III.     Battery and False Arrest and Imprisonment Claims

Gill also brings common law claims of battery and false arrest and imprisonment against Officer Migliore in his individual capacity, and against the Village on a theory of *respondeat superior*. Although the Court could relinquish supplemental jurisdiction over these claims, it will address them on their merits because they are largely indistinguishable from the constitutional claims addressed above. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). The state-law claims are so intertwined with the constitutional tort claims that none of "the values of judicial economy, convenience, fairness, and comity" would be served by declining

---

[10] Because Migliore's limited use of force was objectively reasonable, and he had probable cause to effectuate the seizure, there is no need to address his argument that he is entitled to qualified immunity. Tucker v. Williams, 682 F.3d 654, 660 (7th Cir. 2012) ("Because we do not find a constitutional violation, we need not and do not address Williams' qualified immunity defense.").

supplemental jurisdiction in this case. *See Montano v. City of Chicago*, 375 F.3d 593 (7th Cir. 2004) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

To prove false arrest and imprisonment, Gill must show that Officer Migliore "restrained or arrested [her] without having reasonable grounds to believe that [she] was committing an offense." *Miller v. Lewis*, 381 F. Supp. 2d 773, 788 (N.D. Ill. 2005) (citing *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1220 (Ill. App. 2003)); *see* 725 ILCS 5/107-2 (An officer may arrest a person if he "has reasonable grounds to believe that the person is committing or has committed an offense."). "'Reasonable grounds' and 'probable cause' are synonymous for purposes of arrest." *McBride*, 576 F.3d at 706 (quoting *People v. Tyler*, 471 N.E.2d 968, 974 (Ill. 1984) (alterations in original)). Because the foregoing analysis already demonstrated that Officer Migliore had probable cause to arrest Gill, and consequently, that she has not proven the absence of probable cause, Gill's claim of false arrest and imprisonment against Officer Migliore fails.

Under Illinois civil law, "battery is the 'unauthorized touching' of another that 'offends a reasonable sense of personal dignity.'" *Chelios*, 520 F.3d at 692 (quoting *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. 1995)). And in the case of a public employee, liability attaches only if his conduct was willful and wanton. 745 ILCS 10/2-202. To be considered willful and wanton, conduct must "show[] an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Willful and wanton is a more stringent standard than the objective reasonableness standard applied to Fourth Amendment claims. *See DeLuna v. City of Rockford*, 447 F.3d 1008, 1013 (7th Cir. 2006) ("[The plaintiff] seeks a determination that conduct which is a reasonable response under the Fourth Amendment nevertheless can constitute willful and wanton conduct under state law. The difficulties of such a quest are apparent.").

Here, as a matter of law, the plaintiff cannot establish that Officer Migliore lacked lawful justification for his physical contract with her. Officer Migliore's legally justified actions in placing Gill in a minimally forceful arm bar technique, after she admittedly made physical contact with him, and then escorting her to and holding her against a car for less than a minute, do not constitute a battery, let alone willful and wanton conduct. *See Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) ("pulling a suspect from a car, pushing him against the car, and pinning his arms behind his back to handcuff him were reasonable actions to take" and were not willful and wanton). Thus, Officer Migliore is not liable for battery, either.

Finally, the Village cannot be vicariously liable under *respondeat superior* because Officer Migliore did not commit any of the state law claims. *See* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").

* * *

Because Gill admitted that she made physical contact with Officer Migliore during a crime-scene interview, his brief detainment of Gill, and concomitant use of minimal force to effectuate that detainment, were objectively reasonable as a matter of law. For the same reasons, neither Migliore nor the Village can be liable for battery or false imprisonment under Illinois law. Accordingly, the defendants' motion for summary judgment is granted.

*[signature: John J. Tharp Jr.]*

Date: March 27, 2014

John J. Tharp, Jr.
United States District Judge